IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00846-D

| | | |
|---|---|---|
| DONALD LEE FRANK, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-10, DE-12] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Donald Lee Frank ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 29, 2011, alleging disability beginning March 27, 2010. (R. 17, 203-06). The claim was denied initially and upon reconsideration. (R. 71-99). A hearing before the Administrative Law Judge ("ALJ") was held on May 28, 2013, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 31-55). On July 11, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 17-30). Claimant requested a review of the ALJ's decision, and the Appeals Council denied Claimant's request for review on September 16, 2014. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred by (1) improperly evaluating the medical opinion of Dr. Zota, a consultative examiner; (2) improperly applying *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999); and (3) failing to account for Claimant's severely limited range of motion of the neck in the residual functional capacity ("RFC") and hypothetical question

3

to the VE. Pl.'s Mem. [DE-11] at 4-8.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant did not engage in substantial gainful employment from his alleged onset date of March 27, 2010 through his date last insured of June 30, 2013. (R. 19). Next, the ALJ determined that Claimant had the severe impairments of degenerative joint disease, arthritis, and degenerative disc disease and the non-severe impairments of depression and substance abuse. *Id.* Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitation in his activities of daily living, social functioning, and concentration, persistence and pace, with no episodes of decompensation of extended duration. (R. 20-21). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] except he could "only occasionally reach overhead with his dominant right upper extremity and occasionally perform postural activities (i.e., crouching,

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" means occurring from very little up to one-third of the time and generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

stooping, etc...)." (R. 21). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 21-23). At step four, the ALJ concluded that Claimant was unable to perform any past relevant work. (R. 24). However, at step five, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 25-26).

## B. Claimant's Testimony at the Administrative Hearing

Claimant was 47 years old and single at the time of the administrative hearing. (R. 35-36). He completed the twelfth grade and attended a university for four years but did not obtain a degree. (R. 35). Claimant was unemployed and had not worked since his alleged onset date in March 2010, but had been receiving $7,900.00 monthly in disability benefits from the National Football League for approximately two years. (R. 36-37). Claimant retired from the NFL in 1996 due to a back injury. (R. 37). He tried to rehabilitate his back for two years and joined the European NFL in 1998, but continued to have back problems and retired again after several months. (R. 37). Claimant also worked for a number of months as a telemarketer and at a fitness club. (R. 38).

Claimant's main problem is his back, which has been an issue since he played professional football. (R. 40). He underwent back surgery in 2008, consisting of an L3-L5 fusion of Claimant's lower spine. (R. 40, 45). It provided some relief, but he still cannot sit for more than 20 to 25 minutes at a time due to pressure on his back, has to change positions after standing for 15 to 20 minutes, and can walk for 15 minutes before needing to sit down. (R. 40, 43, 49). Claimant continues to experience tingling in his legs and back pain and uses a cane roughly three times a week, but was not using it at the hearing. (R. 40-41). He walks slowly, taking short steps due to his pain, experiences a grinding sensation and pain when bending over, and has limited motion and

5

Case 5:14-cv-00846-D Document 16 Filed 01/12/16 Page 5 of 20

ankle pain that makes it difficult to walk heel to toe. (R. 47-48). Claimant also has a right shoulder injury, and he is right handed. (R. 41). He had surgery on his right shoulder, but still cannot lift more than 10 to 15 pounds over his head and experiences clicking or popping and pain. (R. 41, 46). Claimant tore a pectoral muscle, which bothers him frequently, but he has received no treatment aside from medication for that injury. *Id.* Claimant had knee surgery in 2009 or 2010 and continues to have pain and grinding in his knees, but does not wear a knee brace. (R. 41-42, 48). Claimant uses his arms to assist him in standing from a seated position due the pain in his knees. (R. 48). Claimant has a neck injury, for which surgery has been recommended by Dr. Miller, and a thoracic fracture at T11-T12 that also bothers him. (R. 42). Claimant experiences constant pain due to these problems, which also affects his ability to concentrate. *Id.*

Between 2011 and 2013, Claimant did not visit a doctor with the exception of two consultative examining physicians in connection with his disability application. (R. 38-39). Claimant had no health insurance at that time and had to pay out of pocket, and his prior medical care had been covered by Medicaid. (R. 39). On May 15, 2013, roughly two weeks prior to the hearing, Claimant received prescriptions for medications for his pain, and prior to that time he used medications "off and on" that were left over from prior prescriptions to treat his back pain. *Id.* The medications provide some relief, but make him drowsy and he sleeps four to five hours a day, sometimes more. (R. 39, 43).

Claimant lives alone, although his brother stays with him once or twice a week and helps with some chores. (R. 36, 43-44). His mother, sister, and other brothers also help. (R. 43). Claimant does not cook at all and goes out occasionally to shop or get fast food. (R. 44). He drives approximately three times a week and attends church usually once a month. (R. 35, 44). Claimant

reads some books and the newspaper and keeps up with current sports news. (R. 36). Claimant's attorney noted for the record that Claimant needed to stand for a few minutes approximately 30 minutes into the hearing. (R. 54).

C.  **Vocational Expert's Testimony at the Administrative Hearing**

Dr. Renee Evans testified as a VE at the administrative hearing. (R. 50-54). The VE classified Claimant's past relevant work as a professional athlete as Dictionary of Occupational Titles ("DOT") code 153.341-010, medium exertion level, and SVP of 6. (R. 50). The ALJ next asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant with the RFC to perform light work with the additional limitations of only occasional overhead reaching with the dominate right upper extremity and only occasionally engaging in postural activities, such as "crouching, stooping, or the like." (R. 50-51). The VE opined that the hypothetical individual could perform the jobs of usher, DOT code 344.677-014, light exertion level, and SVP of 2; furniture rental consultant, DOT code 295.357-018, light exertion level, and SVP of 2; and boat rental clerk, DOT code 295.467-014, light exertion level, and SVP of 2. (R. 51). The ALJ asked the VE to further assume the hypothetical individual was limited to sedentary work with the same additional limitations given in the first hypothetical. *Id.* The VE opined that the hypothetical individual could perform the jobs of call out operator, DOT code 237.367-014, sedentary exertion level, and SVP of 2, and surveillance system monitor, DOT code 379.367-010, sedentary exertion level, and SVP of 2. *Id.* Finally, the ALJ asked the VE to assume the hypothetical individual had the walking, standing, and sitting limitations described by Claimant, as well as the need to lie down and sleep after taking medication during the day. (R. 51-52). The VE opined that such an individual could not engage in full-time competitive work. (R. 52). The VE

indicated there was no conflict between her testimony and the DOT. *Id.*

Claimant's attorney inquired as to whether the jobs listed by the VE were full-time jobs, primarily divided into four two-hour work segments in which breaks and lunch would be in between, and the VE answered in the affirmative. (R. 52). The VE confirmed that the limitation of being able to sit for only 10 to 15 minutes at a time or stand for only 15 minutes at a time would preclude the previously listed jobs. (R. 53). The VE also confirmed that a 10 pound lifting limitation would limit the individual to sedentary work. *Id.* The VE indicated that the limitation to occasional overhead reaching did not limit the jobs provided, but would limit other light or sedentary jobs. (R. 53-54). The VE also confirmed that taking breaks in addition to the traditional break schedule previously discussed would preclude all work. (R. 54).

## V. DISCUSSION

### A. The ALJ's Consideration of Dr. Zota's Opinion

Claimant contends that the ALJ's reasons for rejecting the February 2012 opinion of Dr. Zota, a consultative examiner, are not supported by substantial evidence. Pl.'s Mem. [DE-11] 4-6. In response, Defendant argues that the ALJ correctly evaluated Dr. Zota's opinion, and substantial evidence supports the ALJ's decision to discount the opinion. Def.'s Mem. [DE-13] at 8-10. The undersigned concludes that the ALJ properly considered Dr. Zota's opinion.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). More weight is generally given to opinions of treating sources, who usually

8

Case 5:14-cv-00846-D   Document 16   Filed 01/12/16   Page 8 of 20

are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to

9

discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations omitted).

Dr. Zota evaluated Claimant on February 14, 2012, and noted the following relevant findings: neck pain; problem with lower back, both knees, right shoulder, and right hand; slow gait with short steps; no assistive device used; difficult to walk on heel and toe; difficult to squat and rise; grip strength in right hand is 4+/5; difficult to manipulate large objects; some difficulty to raise right shoulder overhead in certain positions; upper extremities—right shoulder has limited range of motion and rest of joint normal; lower extremities—both knees 2+ crepitation with some flexion, limitation, and pain, cervical and thoracolumbar spine with muscle spasm, tenderness and severe limited range of motion, and negative straight leg raise test; and no problem getting on and off the examining table. (R. 539-41). Dr. Zota provided, based on his evaluation, the following summary conclusion:

> This 46-year-old African-American male ex-NFL player here for Disability evaluation related to multiple injuries sustained during his playtime and surgeries, constant chronic lower back pain, spinal fusion, both knee problem, left knee surgery, right shoulder problem, right hand weakness, two surgeries in 1993 and 1994. Based on this evaluation, this impairment may affect his prolonged sitting and standing 10 to 15 minutes at a time, 2- to 3-hour per 8-hour period. He is walking about half a mile, no assistive device used. He has problem bending and lifting no more than 10 pounds, right hand weakness, difficult to manipulate large objects and right shoulder difficult to elevate above head in certain position. No problem to hear, speak or

10

travel.

(R. 541). The ALJ summarized Dr. Zota's findings (R. 22), along with the other medical evidence of record, and evaluated Dr. Zota's opinion as follows:

> Dr. Zota's opinion that the claimant would be limited to sitting and standing 2 to 3 hours in an 8-hour workday and that he could walk ½ a mile with no assistive device is given some weight because it is generally consistent with the claimant's chronic pain, reduced range of motion, and reported stiffness. However, the severity of limitation on sitting is not supported by the overall evidence, which shows a negative straight leg raise test and his own admission that he could drive independently. Dr. Zota's findings that he had problems bending, lifting more than 10 pounds, and reaching overhead with his right shoulder are given great weight because they are consistent with the evidence described above.

(R. 24).

Claimant contends the ALJ erroneously rejected Dr. Zota's limitation of sitting and standing to two to three hours a day, which would preclude Claimant from engaging in even sedentary work. Pl.'s Mem. [DE-11] at 4-5. Specifically, Claimant takes issue with (1) the ALJ's decision to give only some weight to an examining physician's opinion which the ALJ found to be generally consistent with Claimant's chronic pain and reduced range of motion; (2) the ALJ's statement that the sitting limitation was not supported by the overall evidence, which Claimant contends contradicts the ALJ's step one finding; and (3) the ALJ's reliance on a negative straight leg raise and that fact that Claimant can drive as grounds to reject Dr. Zota's opinion. *Id.* These contentions are without merit.

First, there is no inherent flaw in the ALJ's determination that Dr. Zota's opinion is entitled only to some weight to the extent it is generally consistent with but not fully supported by other evidence of record. (R. 24); *Craig*, 76 F.3d at 590. Next, the ALJ's finding that Claimant's degenerative joint disease, arthritis, and degenerative disc disease were severe impairments does not

11

contradict his finding that a two- to three- hour sitting limitation was not supported by the evidence. The Fourth Circuit has recognized that "[s]tep two of the sequential evaluation is a threshold question with a de minimis severity requirement" and, in doing so, rejected the reasoning urged by Claimant here—that the finding of a severe impairment at step two contradicts the conclusion that the impairment's impact on the claimant's functioning is less than disabling. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (unpublished) (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153-54 (1987); S.S.R. 88-3c, 1988 WL 236022 (Jan. 1, 1988)). Finally, the ALJ considered not only Dr. Zota's examination findings, but also that Claimant: admitted to bench pressing over 300 pounds in April 2010, which is after the alleged onset date; had not returned to the doctor who performed his back surgery since 2010; did not see any doctor, aside from DDS physicians, between 2011 and 2013; had not pursued more aggressive treatment; and was not credible in alleging that he could not afford treatments due to lack of insurance considering his reported disability payments of over $7,000 per month. (R. 23); *see Lucas v. Colvin*, No. 4:13-CV-244-BO, 2014 WL 6694037, at *2 (E.D.N.C. Nov. 26, 2014) (unpublished) (finding substantial evidence supported the ALJ's decision to discount a medical opinion where the treatment records showed, among other things, conservative treatment of plaintiff's condition). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (unpublished). The ALJ provided reasons for discounting Dr. Zota's opinion that are supported by substantial evidence and, thus, did not err in evaluating Dr. Zota's opinion.

12

**B.    The ALJ's Consideration of *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999)**

Claimant contends the ALJ mistakenly opined that this case is governed by *Albright* and wrongly denied Claimant benefits because his condition had not worsened or changed substantially since a determination on a prior claim for benefits on March 26, 2010. Pl.'s Mem. [DE-11] at 6-7. In response, Defendant argues that the ALJ properly considered the prior decision and accounted for some further degeneration in Claimant's condition by adding limitations not present in the prior RFC determination. Def.'s Mem. [DE-13] at 10-12. The undersigned concludes that the ALJ did not improperly apply *Albright*.

In *Albright*, the claimant sought disability benefits after sustaining neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* The second ALJ determined, based on the Fourth Circuit case of *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) and its purported codification in Social Security Acquiescence Ruling ("AR") 94-2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Albright*, 174 F.3d at 474-75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal to the district court, the magistrate judge determined that the Social Security Administration ("SSA") in AR 94-2(4) had interpreted *Lively* too broadly and the district court agreed, remanding Albright's claims for

13

reconsideration. *Id.* The court of appeals affirmed the district court, holding that the SSA impermissibly merged the claimant's two claims into one in contravention of the agency's "traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain that "[i]n practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case on which AR 94-2(4) was premised. *Id.* at 477.

In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Id.* at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits; however, the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive" and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted). Thus, the *Albright* court rejected AR 94-2(4) as erroneously restating the holding in *Lively* and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 478. The SSA subsequently issued AR 00-1(4), 65 FR 1936-01 (Jan. 12, 2000), which rescinded AR 94-2(4) and interpreted *Albright* to hold as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

14

AR 00-1(4).

Here, there is no indication that the ALJ incorrectly applied *Albright*. On March 26, 2010, an ALJ issued a favorable decision to Claimant for a closed period dating from June 29, 2002 through October 9, 2009. (R. 61-70). It was determined in that decision that beginning October 10, 2009, Claimant's functioning had significantly improved and that he had the RFC to perform a full range of sedentary work. (R. 69). In the present case, the ALJ found that Claimant's condition "has not worsened or changed substantially" since the March 26, 2010 determination and gave the prior ALJ's RFC determination great weight. (R. 24). The ALJ considered the prior decision in addition to the medical evidence, opinion evidence, and Claimant's testimony, in conformity with Acquiescence Ruling 00-1(4), and there is no indication that the ALJ believed he was bound by the prior ALJ's findings despite other evidence of record favorable to Claimant. (R. 22-24). In fact, the ALJ added postural limitations not present in the prior RFC to account for Claimant's documented reduced range of motion since the prior decision, which further undermines the suggestion that the ALJ violated *Albright*. There is no support for Claimant's suggestion that the perceived *Albright* error may have affected the ALJ's credibility findings or consideration of other evidence, where the ALJ considered all the evidence and gave reasons supported by substantial evidence for his determination. (R. 22-24).

Claimant relies on Dr. Zota's opinion as evidence that his condition has materially changed since the prior decision. Pl.'s Mem. [DE-11] at 7. As discussed above, the ALJ properly evaluated Dr. Zota's opinion, explaining his reasons for declining to adopt all the limitations suggested. *See supra* section V.A. pp. 11-12. The ALJ also noted in the RFC discussion that Claimant had a successful arthroscopic surgery on his right shoulder in March 2010 and was at that time determined

15

by his doctor to be capable of returning to work, and the treatment note indicates he was working as a personal assistant (R. 381-83); that Claimant injured his right shoulder first in a fall in April 2010 (R. 380, 469) and again doing heavy weightlifting in May 2010 (R. 379, 462), but in July 2010 he was noted to be recovering gradually with some discomfort but essentially full range of motion (R. 377); and that Claimant did not seek treatment again until May 2013, when the treatment note indicates he sought medication for his chronic back pain (R. 548). Accordingly, the ALJ's finding that Claimant's condition "has not worsened or changed substantially" since the March 26, 2010 determination is supported by substantial evidence, and the ALJ did not violate *Albright* in the consideration of the prior ALJ's RFC.

C.  **The ALJ's Consideration of Claimant's Limited Range of Motion of the Neck in the RFC and Hypothetical Question to the VE**

Claimant contends the ALJ's RFC and hypothetical question to the VE failed to account for Claimant's limited range of motion of the neck noted in Dr. Zota's examination findings. Pl.'s Mem. [DE-11] at 7-8. In response, Defendant contends that the ALJ's hypothetical accurately represents the ALJ's RFC finding and that the ALJ included the postural limitation suggested by Dr. Zota. Def.'s Mem. [DE-13] at 12-14. The undersigned concludes the ALJ's RFC and hypothetical sufficiently conveyed Claimant's limitations.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780

16

F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted).

The purpose of a VE's testimony is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [Claimant's] impairments and resulting limitations" as evidenced by the record); *Cannon v. Astrue*, No. 4:08-CV-160-D, 2010 WL 902485, at *2 (E.D.N.C. Mar. 11, 2010) (unpublished) (same).

17

Claimant contends the ALJ erred by not including in the RFC or hypothetical to the VE limitations related to Claimant's neck, or cervical spine, and columbar spine, specifically Claimant's neck injury, pain, or limited range of motion and Dr. Zota's examination findings that Claimant had muscle spasm, tenderness, and severely limited range of motion in his cervical and columbar spine. Pl.'s Mem. [DE-11] at 8. First, while the ALJ did not recite Dr. Zota's findings regarding muscle spasms and tenderness of the spine, he was not required to discuss every piece of evidence, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), and expressly considered a May 2011 MRI showing degenerative disc disease in Claimant's cervical and thoracic spine (R. 22) and Claimant's reduced range of motion in the neck noted in Dr. Zota's examination of Claimant (R. 23). Next, based on his examination findings, Dr. Zota concluded Claimant "has [a] problem bending and lifting no more than 10 pounds, right hand weakness, difficult to manipulate large objects and right shoulder difficult to elevate above head in certain position." (R. 541). The ALJ gave great weight to these findings of Dr. Zota and included related limitations in the RFC and hypothetical to the VE—only occasional overhead reaching with the dominant right upper extremity and occasional performance of postural activities, such as crouching, stooping, "or the like." (R. 21, 50-52). While Claimant takes issue with the ALJ's use of "or the like," Pl.'s Mem. [DE-11] at 8, the court need not address that issue, because the specific limitations imposed by the ALJ on stooping and crouching address the functional limitations suggested by Dr. Zota.

The ALJ limited Claimant to only occasionally performing "postural activities (i.e., crouching, stooping, etc." (R. 21) and in his hypothetical to the VE indicated that Claimant could only on occasion engage in "postural activities such as crouching, stooping, or the like" (R. 51). "Stoop" is described as the ability "to bend the spine alone" or "bending the body downward and

18

forward by bending the spine at the waist," and "crouch" is described as the ability to "bend both the spine and legs" or "bending the body downward and forward by bending both the legs and spine[.]" S.S.R. 85-15, 1985 WL 56857, at *2, 7 (Jan. 1, 1985). The limitations on stooping and crouching in the RFC and hypothetical to the VE addressed the bending limitation found by Dr. Zota related to Claimant's limited range of motion in his cervical and columbar spine. Furthermore, the jobs of call out operator (DOT code 237.367-014) and surveillance system monitor (DOT code 379.367-010), identified by the VE and relied upon by the ALJ at step five (R. 25, 51), do not require the postural activities of stooping, crouching, climbing, balancing, kneeling, or crawling. DOT, 237.367-014, 1991 WL 672186 (Jan. 1, 2008); DOT, 379.367-010, 1991 WL 673244 (Jan. 1, 2008). Accordingly, the ALJ's RFC and hypothetical to the VE sufficiently addressed the postural limitations to which Dr. Zota opined.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-10] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-12] be ALLOWED, and the final decision of the Commissioner be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 26, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 12th day of January 2016.

*/s/ Robert B. Jones, Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge

20

Case 5:14-cv-00846-D   Document 16   Filed 01/12/16   Page 20 of 20